***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence or rehear the parties or their representatives. Accordingly, the Full Commission modifies and affirms the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the deputy commissioner hearing and following in a Pre-Trial Agreement admitted into evidence as Stipulated Exhibit #1 as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed at all times relevant to this claim.
3. Defendant was self-insured with Key Risk Management Services as the Servicing Agent.
4. The plaintiff's average weekly wage is $635.80.
5. The following Industrial Commission Forms are admitted into evidence as Stipulated Exhibit #2:
a. 18 dated 22 October 1997;
b. 33 dated 15 June 2000;
c. 33R dated 19 July 2000;
d. 33 filed by defendant dated 20 July 2000,
e. 33R filed by plaintiff 27 July 2000;
f. 60 dated 5 November 1998;
g. 61 dated 15 May 2000;
 h. Administrative Order filed 8 June 2000 by Former Special Deputy Commissioner Gina Cammarano; and
 i. Administrative Order filed 21 July 2000 by Executive Secretary Tracey Weaver.
6. Plaintiff's medical records regarding this claim are admitted into evidence as Stipulated Exhibit #3 and include the following:
a. Hickory Orthopedic Center;
b. Dr. Stephen J. Naso;
c. Dr. Robert Yapundich;
d. Triad Therapy Services;
e. Dr. Anthony J. DeFranzo;
f. Western North Carolina Rehabilitation Center;
g. Berkley Care Center;
h. Dr. Derek Luney, Hickory Cardiology Associates;
i. Concentra Managed Care Services;
j. Dr. Benjamin Goodman — Nerve Conduction Tests;
k. Connie Henline, Key Risk Case Manager;
l. Dr. Karl V. Schroeder, Psychiatrist;
m. Key Risk 5/15/00 Letter of Denial; and
 m. Attorney for plaintiff's 9 June 2000 letter to Defendants' Rehab Professional.
The medical notes of Dr. Feldman, received at the Commission on 14 May 2000, are also admitted into evidence as part of Stipulated Exhibit #3.
7. Defendant-employer admits plaintiff contracted a compensable occupational disease, right carpal tunnel syndrome, on or about 10 April 1997.
8. The undersigned takes Judicial Notice of the Settlement and Order, approved 23 July 1993 by then Deputy Commissioner now Commissioner Dianne Sellers.
9. The issues to be determined by the Full Commission involve to what further benefits plaintiff is entitled regarding vocational rehabilitation and depression.
10. The depositions of Dr. Robert Yapundich and Dr. Karl Schroeder are a part of the evidentiary record in this case.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. On or about 10 April 1997, plaintiff was a fifty-nine (59) year old female employed by defendant as a flat sewer in upholstery. The flat sewer position includes sewing everything but the cushion. Defendant is engaged in the furniture manufacturing business. Plaintiff has been employed with defendant approximately twenty-four (24) years.
2. Plaintiff used both hands to complete her sewing duties. Plaintiff sewed approximately thirty to forty sofas per day.
3. On or about October 1991, plaintiff developed left carpal tunnel syndrome and ulnar nerve compression at the left elbow and trigger finger involving the thumb and small finger of the left hand for which she filed I.C. No. 262903.
4. On 26 October 1992, Dr. Stephen Naso of Charlotte performed the following surgical procedures on plaintiff: left cubital tunnel release, left carpal tunnel release, and trigger finger release of the left thumb.
5. Dr. Naso performed additional surgery on plaintiff on 12 March 1993 which consisted of re-section of a thickened tendon and release of the flexor tendon of the left thumb. Dr. Naso assigned a ten percent (10%) permanent partial disability rating to plaintiff's left hand and cautioned plaintiff not to return to her previous occupation as an upholstery sewer.
6. On 1 July 1993, plaintiff and defendant entered in a Compromise Settlement Agreement and Release, pursuant to which plaintiff received a lump sum payment of $12,000.00 and payment of all medical expenses related to plaintiff's left hand incurred by that date. This Compromise Settlement Agreement and Release provides, in part, as follows:
 "(3) The said Anna Street does hereby specifically covenant and agree to accept the aforesaid payment in full, final and complete settlement and satisfaction of any and all claims, demands, suits, actions or rights of action, which she has had, now has or may hereafter have, or claim to have, as a result of or by virtue of any matter or thing whatsoever occurring prior to the date of the agreement, and said Anna Street does by these presence, for herself, her heirs, next of kin, and personal representatives, remise, release and forever discharge the said Kroehler Furniture Manufacturing Company, Inc., of, and from any, every and all, and all manner of, action or actions, causes and causes of action, suits, debts, dues, demands, sums of money, damages, judgments and claims whatsoever which the said Anna Street ever had or now has, or which her heirs, next of kin, personal representatives, or any other person can, shall or may have against the said Kroehler Furniture Manufacturing Company, Inc., for or by reason of, or growing out of, the terms and provisions of the North Carolina Workers' Compensation Act, arising or resulting from said alleged injury by accident or occupational disease and alleged disability incurred thereby, and the said Anna Street does further hereby expressly agree that any and all rights which she may have as a result of Section 97-47, as amended of the General Statutes of North Carolina (which section provides for the right to re-open a claim for further compensation or medical benefits in the future) are hereby expressly and specifically forever released and discharged of and from any and all further liability to said Anna Street by reason of any further or additional disability, medical expenses or other benefits arising out of or resulting from said alleged injury by accident or occupational disease which occurred on or manifested itself on or about 26 October 1991."
The parties' duly executed Compromise Settlement Agreement of 1 July 1993 was approved by the Industrial Commission by Order filed 23 July 1993.
7. Plaintiff returned to work for defendant in approximately June 1993 performing her regular duties as an upholstery sewer with no restrictions.
8. On 30 December 1996, plaintiff began treatment with Dr. Robert Yapundich, a neurologist in Hickory, for memory loss. Plaintiff had a family history of Alzheimer's disease, and she was concerned she may be developing it. Plaintiff complained of episodes of forgetfulness including how to perform duties at work that she had regularly performed over twenty years. Plaintiff reported being under a great deal of stress from family problems with her husband having prostrate cancer and her mother confined to a nursing home. Plaintiff also complained of headaches, some nausea and vomiting, elevated blood pressure, sleep disturbance and agitation. Dr. Yapundich diagnosed excessive stress and/or a probable underlying anxiety disorder and treated her with medications.
9. On or about 10 April 1997, both of plaintiff's hands began hurting very badly. Plaintiff sought treatment from her family doctor and reported the pain to defendant.
10. On 13 May 1997, Dr. Williamson at Catawba Memorial Hospital treated plaintiff for complaints relating to carpal tunnel syndrome. Plaintiff was later referred to Dr. Pekman at Hickory Orthopedic Center.
11. Plaintiff saw Dr. Pekman on 30 May 1997 and gave a history of treatment and surgery by Dr. Naso. Examination by Dr. Pekman revealed plaintiff had digital osteoarthritis and moderate crepitas, bilaterally, over the flexor tendons. EMG nerve conduction studies performed on plaintiff confirmed a diagnosis of bilateral carpal tunnel syndrome, right greater than left.
12. On 26 June 1997, Dr. Pekman performed a right carpal tunnel release on plaintiff. Post-operatively, plaintiff made good progress with her right hand. On 24 July 1997, Dr. Pekman also performed left carpal tunnel release surgery on plaintiff. Thereafter, plaintiff began participating in physical therapy. During physical therapy, plaintiff reported aggravating her previous left elbow condition. Defendant paid for both of plaintiff's surgeries and her physical therapy.
13. On 29 September 1997, Dr. Pekman released plaintiff to return to work with restrictions, but not with defendant. Plaintiff had been out of work due to the carpal tunnel syndrome since 22 May 1997 and had been receiving temporary total disability since that time. Dr. Pekman gave plaintiff permanent restrictions of no excessive repetitive activities with either hand and no lifting over five to ten pounds.
14. On 22 October 1997, plaintiff completed a Form 18 listing occupational injury to both hands and arms, arising 10 April 1997 due to repetitive motions of sewing. Defendant filed a Form 60 with the Commission on 12 November 1998. Pursuant to this Form 60, defendant admitted plaintiff's right to compensation for an occupational disease on 10 April 1997. The only description given was "repetitive motion." The Form 60 further noted that defendant commenced compensation to plaintiff on 22 May 1997 at the rate of $423.89 per week.
15. On 4 December 1997, Dr. Pekman declared plaintiff at maximum medical improvement and assigned a five percent (5%) permanent partial disability rating to the right hand and a ten percent (10%) permanent partial disability rating to the left hand.
16. On 6 April 1998, plaintiff saw Dr. Warren Burrows for an independent medical evaluation relating to her left elbow. Plaintiff also had complaints with respect to her neck and shoulder. Dr. Burrows noted plaintiff had several areas of nerve compression (wrists and elbow) and/or tendonitis (fingers) related to plaintiff's many years in sewing.
17. Plaintiff requested an evaluation by Dr. Anthony DeFranzo of North Carolina Baptist Hospital and initially saw him on 5 May 1998. Dr. DeFranzo diagnosed plaintiff's condition as left cubital tunnel syndrome and recommended a surgical release of the extensor attached to the left lateral epicondyle.
18. On 13 July 1998, Dr. DeFranzo performed a left lateral epicondylectomy on plaintiff. After surgery, plaintiff participated in physical therapy for her left elbow. Plaintiff returned to Dr. DeFranzo on 1 December 1998, at which time he found plaintiff to be at maximum medical improvement with a five percent (5%) permanent partial disability rating to the left arm.
19. Throughout the course of plaintiff's treatment with Drs. Pekman, Burrows and DeFranzo, plaintiff continued to seek treatment from Dr. Yapundich. In early 1999, plaintiff still reported headaches with episodes of crying and feeling sorry for herself.
20. In May 1999, plaintiff suffered a heart attack. Following her recuperation, plaintiff's headaches essentially resolved, but her memory problems persisted. Plaintiff also still easily became upset with crying episodes. In August 1999, Dr. Yapundich assured plaintiff he felt her problems were related to anxiety, not Alzheimer's disease. By November 1999, plaintiff reported her headaches had improved as well as her memory, although she felt tired a lot.
21. In December 1999, defendant instituted vocational rehabilitation for plaintiff through Concentra Managed Care. During the initial evaluation on 6 December 1999, plaintiff became tearful and expressed doubts of returning to any type work. Jane Veal was assigned as plaintiff's counselor and a follow-up appointment was scheduled for 17 December 1999.
22. In the interim, plaintiff returned to Dr. Yapundich on 15 December 1999 for an unscheduled visit reporting her headaches and memory problems had returned. Plaintiff also gave Dr. Yapundich a note from her attorney requesting a psychiatric referral to either Dr. Peters or Dr. Kim. Dr. Yapundich declined to refer plaintiff at that time but indicated if she continued to have difficulties, he may consider the psychiatric evaluation.
23. At the 17 December 1999 appointment with Ms. Veal, plaintiff was tearful and expressed her migraine headaches had returned and it was mentally difficult for her to leave home. Ms. Veal commenced a job search on plaintiff's behalf. Later, it was determined plaintiff would benefit from being enrolled in basic skills education classes at Catawba Valley Community College, since plaintiff had only completed the ninth grade.
24. Although plaintiff gained some knowledge working with computers, plaintiff unilaterally stopped participating in the basic education classes. Plaintiff complained that everything was getting to be too much for her to handle.
25. From March 2000 through June 2000, Ms. Veal concentrated job placement efforts for plaintiff on sales associate positions, particularly at J.C. Penney's in Hickory. Plaintiff was offered a position in the children's department of J.C. Penney's in late March 2000, but the position was filled before plaintiff accepted or declined the offer. Plaintiff's reason for not accepting the position was that she did not think she was capable of performing the job due to her memory problems. The sales position with Penney's was part-time at $6.00 per hour. There were full-time sales positions at J.C. Penney's available as well, although never officially offered to plaintiff.
26. On 11 April 2000, plaintiff sought treatment from Dr. Karl Schroeder, a board-certified psychiatrist. Dr. Schroeder diagnosed plaintiff with depression and recommended she suspend any job search because she was not capable of work at this time.
27. In late July 2000, plaintiff informed Ms. Veal she would not accept positions at only $6.00 per hour because they were well below her average weekly wage of $635.80 per week. Plaintiff was qualified for the sales associate position at J.C. Penney's because they did not require a high school diploma and offered on-the-job training, as well as benefits. However, there was no evidence as to any advancement opportunities that might bring the sales associate wages closer to plaintiff's average weekly wage.
28. In September 2000, Dr. DeFranzo recommended plaintiff temporarily suspend job search activities pending completion of a pain control clinic. Dr. DeFranzo recommended Baptist Hospital in Winston-Salem, but the plaintiff wanted to go to attend one in Hickory, which was closer. By the time the Deputy Commissioner closed the evidentiary record in this matter, the parties had resolved this issue and plaintiff was attending the clinic at Baptist Hospital in Winston-Salem and treating with Dr. Feldman.
29. On 12 January 2001, plaintiff submitted to an examination by Dr. Jeffrey Feldman at defendant's request and by Order of Deputy Commissioner Stephenson. This evaluation was another opinion with respect to whether plaintiff's emotional issues are related to her carpal tunnel syndrome. The greater weight of the evidence is that plaintiff's symptoms of both anxiety disorder and depression predate plaintiff's carpal tunnel syndrome; however, her ongoing pain symptoms related to the carpal tunnel syndrome are a significant stressor which aggravates symptoms of depression and anxiety.
30. Plaintiff is not capable of working at this time and is in need of continuing pain management treatment. Plaintiff is not at maximum medical improvement for her carpal tunnel syndrome.
31. After the deputy commissioner hearing in this matter, defendant replaced Jane Veal as plaintiff's vocational counselor. Plaintiff was uncomfortable with Ms. Veal because she felt pressured to either return to work or settle, and this increased plaintiff's anxiety and depression. Because of plaintiff's experience with Ms. Veal it would be counterproductive for defendant ever to assign Ms. Veal to plaintiff's case in the future.
32. Following approval of the Compromise Settlement Agreement related to her previous claim, plaintiff continued working with defendant with no restrictions in her old position as a flat sewer. Plaintiff was therefore re-exposed to conditions causing carpal tunnel syndrome from which arose her new April 10, 1997 claim for occupational disease in both hands and arms due to repetitive motions of sewing. Defendant has failed to produce evidence that plaintiff's left extremity carpal tunnel syndrome is a recurrence of her 1991 carpal tunnel syndrome.
33. Ordinarily, the 1993 Compromise Settlement Agreement and Order would bar plaintiff from any future recovery relating to left carpal tunnel syndrome and left cubital tunnel syndrome. However, in this case, defendants voluntarily admitted compensability with respect to plaintiff's left arm problems when they paid for plaintiff's left carpal tunnel release surgery in 1997, temporary total disability for the time plaintiff was out for the surgery, and subsequent medical bills; therefore, plaintiff's occupational disease claim is not barred by her 1993 Compromise Settlement Agreement. Plaintiff filed a Form 18 dated 22 October 1997 claiming occupational disease caused by repetitive motions of sewing in both hands and arms and defendant executed a Form 60 dated 5 November 1998 including that the description of plaintiff's occupational disease was repetitive motion. Defendant is now estopped from raising the 1993 Settlement Agreement as a bar to left arm recovery for the first time on their Form 33, dated 20 July 2000; a timely defense should have been made in 1997, not in 2000, after accepting the compensability of the claim.
34. Plaintiff is not at maximum medical improvement with respect to her anxiety and depression which are related to her occupational disease claim and would benefit from continued treatment for these psychological conditions with Dr. Karl Schroeder.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's bilateral carpal tunnel syndrome and bilateral arm problems are due to causes and conditions which are characteristic of and peculiar to her employment with defendant-employer, and are not ordinary diseases of life to which the general public so employed is equally exposed. Therefore, plaintiff's bilateral carpal tunnel syndrome and arm problems are compensable occupational diseases as defined by the Act. N.C.G.S. § 97-53(13).
2. Plaintiff's occupational disease claim is not barred by her prior clincher agreement with defendant-employer approved by the Industrial Commission on July 23, 1993. Defendants filed a Form 60 admitting compensability of plaintiff's new claim and failed to produce evidence that plaintiff's left extremity carpal tunnel syndrome is a recurrence of her 1991 carpal tunnel syndrome condition.
3. As a result of her compensable occupational disease, plaintiff is entitled to continuing temporary total disability at her compensation rate of $423.89 per week beginning May 22, 1997, until further Order of the Commission. Defendant's Motion to Suspend Payment for plaintiff's non-compliance with vocational rehabilitation is DENIED. Defendant's Motion for an Order for plaintiff to cooperate with vocational rehabilitation is also DENIED. N.C.G.S. § 97-29.
4. Defendants have removed Jane Veal as plaintiff's vocational counselor. It is in the best interest of both parties that Jane Veal not be assigned as plaintiff's vocational counselor in the future.
5. Plaintiff is entitled to have defendants provide all medical treatment arising out of and in the course of the employment with defendant-employer for her bilateral carpal tunnel syndrome and bilateral arm problems to the extent it tends to effect a cure, give relief or lessen plaintiff's disability. This includes treatment for plaintiff's anxiety and depression. N.C.G.S. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay to plaintiff temporary total disability at her compensation rate of $423.89 per week beginning May 22, 1997, until further Order of the Commission.
2. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff in paragraph 1of this AWARD is hereby approved for plaintiff's counsel and every fourth check shall be payable directly to plaintiff's counsel.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of her compensable occupational disease when bills for same shall have been submitted to the Industrial Commission pursuant to approved Industrial Commission procedures. This includes medical expenses relating to plaintiff's treatment for anxiety and depression.
4. Dr. Karl Schroeder is hereby designated as plaintiff's authorized treating physician.
5. Defendants shall pay the costs.
This the ___ day of February 2002.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER